### UNION STATE BANK v. MAYOR et al.

No. 10919—Opinion Filed Feb. 13, 1923.

(Syllabus.)

1. **Bills and Notes—Holders in Due Course—Burden of Proof—Defenses of Fraud and Failure of Consideration.**

The undisputed testimony in this case shows the existence of such infirmities in the notes sued on as to render them unenforceable between the original parties, and under section 7729, Compiled Statutes 1921, the burden is upon the holder to prove that he, or some person under whom he claims, acquired title as holder in due course.

2. **Same—Indorsement—Question for Jury.**

Where the notes purport to have been transferred by the special indorsement of S., and the holder contends that the notes were delivered to it by S., and there is testimony tending to show that S. did not indorse the notes and did not deliver them to the holder, the question as to whether the plaintiff is the holder in due course is a question of fact for the jury.

Error from Superior Court, Pottawatomie County; Leander G. Pitman, Judge.

Action by the Union State Bank against Joseph Mayor and others on promissory notes. Judgment for defendant; plaintiff brings error. Affirmed.

W. N. Maben and Abernathy & Powell, for plaintiff in error.

Thos. W. Leahy and Forrester Brewster, for defendants in error.

COCHRAN, J. The plaintiff, the Union State Bank, brought this action against Joseph Mayor and others to recover on three promissory notes executed by Joseph Mayor and payable to Shawnee Life Insurance Company. The petition alleges a separate cause of action for each of the notes, and alleges that, while the notes were payable to the Shawnee Life Insurance Company, they were delivered to and were

the property of C. M. Stewart; that the notes were indorsed to C. M. Stewart by the Shawnee Life Insurance Company and delivered to him, and thereafter, for valuable consideration and before maturity of said notes, C. M. Stewart indorsed said notes in writing and delivered same to the Union State Bank, and that the Union State Bank is the owner of said notes. The defendant, Joseph Mayor, answered, denying that the notes were executed and delivered as the property of C. M. Stewart, and alleged that they were executed and delivered to the Shawnee Life Insurance Company as the purchase price for certain stock in the Shawnee Life Insurance Company; that they were obtained by false and fraudulent representations, which are set out in detail in the answer; and alleged further that the stock was never issued or delivered to him, and an entire failure of consideration. Plaintiff filed a reply in which it denied that C. M. Stewart was the agent for the Shawnee Life Insurance Company, and denied that the stock was purchased by Joseph Mayor from the Shawnee Life Insurance Company, but alleged it was personal stock of C. M. Stewart and sold by C. M. Stewart on his own account, and denied that plaintiff had any notice of any of the matters set up in defendant's answer at the time it received the notes, and alleged that it purchased the same for value in good faith before maturity.

The trial court sustained a demurrer to the defendant's testimony as to the first cause of action, but submitted the second and third causes of action to the jury, and the jury returned a verdict in favor of the defendant and against the plaintiff. Thereafter the trial court granted a new trial as to the first cause of action and overruled the motion of the plaintiff for a new trial as to the second and third causes of action. From the judgment entered on the second and third causes of action and the order overruling its motion for new trial, the plaintiff has appealed.

It was not denied in the pleadings of the plaintiff, in the testimony introduced, or by the brief filed in this court, that the notes were obtained by fraudulent misrepresentation and that the consideration therefor entirely failed. The only contention of the plaintiff is that it was the holder in due course and was unaffected by the infirmities in the notes. The testimony shows that, at the time the notes were executed and at the time they came into the possession of the plaintiff, Martin C. Fleming was the president of the Shawnee Life Insurance Company and was also the president of the

Union State Bank, and the plaintiff proceeds upon the assumption that this was the only testimony which could have justified the jury in holding that the plaintiff was not a holder in due course, and argues at length the question that notice to Martin C. Fleming was not notice to the plaintiff, although he was the president of the payee insurance company and president of the plaintiff bank. We are of the opinion that the assumption by the plaintiff that the verdict of the jury was based upon this fact is not supported by the record. The various instructions given by the trial court correctly state the law of the case, and no objection is urged by the plaintiff as to these instructions, and upon the specific request of the plaintiff, the court instructed the jury as follows:

"You are instructed that notice to Martin C. Fleming of any defenses against said notes did not in and of itself constitute notice to the plaintiff of such defenses."

We do not, therefore, believe that it can be said that the verdict of the jury was based upon the above mentioned testimony.

The testimony on the part of the plaintiff was that the notes were indorsed by the Shawnee Life Insurance Company as follows:

"Pay to C. M. Stewart, without recourse.
"Shawnee Life Insurance Company.
"Albert Zange,
"Secretary-Treasurer"

—and were delivered to C. M. Stewart; that C. M. Stewart was indebted to the plaintiff, and before the maturity of the Mayor notes transferred and delivered said notes to the plaintiff as collateral security by the following indorsement:

"Pay to Union State Bank,
"C. M. Stewart"

—that, although Martin C. Fleming was president of the plaintiff bank and also president of the Shawnee Life Insurance Company, he was not an active officer in the bank and did not participate in the making of the loans and did not participate in this transaction wherein the bank received the Mayor notes; that the active officers of the bank who handled the transaction when Stewart transferred the Mayor notes to the bank had no knowledge of any infirmities existing in the notes. On the part of the defendant, the testimony shown by C. M. Stewart that, after the notes were taken by him for the Shawnee Life Insurance Company, they were delivered to Martin C. Fleming for the insurance company, and

thereafter Fleming had a conversation with him in which he told him:

"Stewart, we better return these notes to Mayor, for we are in a little trouble with the Insurance Commission and it might get us in trouble"

—and that he told Fleming:

"If you think anything of that sort, why we better return them or do just as you please with them. I don't want to be mixed up in anything if the Insurance Commission is complaining of the way business is being transacted."

The witness further testified that that was the last he heard of the Mayor notes until this suit was filed. He said that the notes were never delivered over to him with the indorsement which they bear, and that he never at any time indorsed the notes or delivered them over to the Union State Bank. In addition to the testimony of this witness, it also appears that Francis Fleming, a nephew of Martin C. Fleming, was cashier of the Union State Bank at the time it is alleged by plaintiff the notes were delivered to it by Stewart, and the transaction was handled by Francis Fleming and the vice president; neither Francis Fleming nor Martin C. Fleming testified in the case.

Section 7722, Compiled Statutes 1921, defines a holder in due course as follows:

"A holder in due course is a holder who has taken the instrument under the following conditions: First, That it is complete and regular upon its face. Second, That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact. Third, That he took it in good faith and for value. Fourth, That at the time it was negotiated to him he had no notice of any infirmities in the instrument or defect in the title of the person negotiating it."

Section 7729, Compiled Statutes 1921, provides:

"Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove he or some person under whom he claims acquired the title as a holder in due course."

Section 7703, Compiled Statutes 1921, provides for special indorsements or indorsements in blank, and section 7704 provides as follows:

"A special indorsement specifies the person to whom or to whose order the instrument is to be payable; and the indorsement of such indorsee is necessary to the further negotiation of the instrument."

Section 7726, Compiled Statutes 1921, provides:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

Applying the above quoted provisions of the statute to the facts in the instant case, we find that, although the burden was on the plaintiff to prove that it or some person under whom it claimed acquired title to the notes in due course, Martin C. Fleming, who handled the transaction for the Shawnee Life Insurance Company, and Francis Fleming, who handled the transaction for the plaintiff at the time it is alleged the notes were received by him from Stewart, did not testify in regard to the transactions at all. In addition to that, if the testimony of C. M. Stewart was believed by the jurors, they were warranted in finding that the notes were never transferred by the Shawnee Life Insurance Company to Stewart, and were never indorsed by him or delivered by him to the plaintiff. If the jurors believed those facts instead of the testimony of the vice president of the bank, who claimed that the notes came into the possession of the bank through the indorsement of Stewart and by a delivery to it by Stewart in person, they were warranted in finding that the bank had knowledge of such facts in connection with the indorsement and transfer of the notes that its action in taking the instruments amounted to bad faith, and that the bank was not the holder in due course. In Besse v. Morgan, 84 Okla. 203, 202 Pac. 1012, this court held:

"Even though the defendant offers no evidence on rebuttal to disclose that the plaintiff was not a bona fide holder of the note in due course, but where defendant has denied said fact, and the evidence introduced on the part of the plaintiff to prove such fact was of such nature that men of ordinary intelligence might draw different conclusions therefrom, it is not error for the court to refuse to instruct a verdict for the plaintiff."

See, also, Lambert v. Smith, 53 Okla. 606, 157 Pac. 909; Arnd v. Aylesworth (Iowa) 123 N. W. 100, 29 L. R. A. (N. S.) 638.

We are of the opinion that there was sufficient evidence to entitle this case to go to the jury, and that the judgment of the trial court should be, and the same is hereby affirmed.

JOHNSON, V. C. J., and McNEILL, KENNAMER, and NICHOLSON, JJ., concur.